## JOHN NUETZEL
### v.
## ANNA M. B. NUETZEL.

1. HUSBAND AND WIFE—INEQUITABLE DECREE.—Where a decree gave to the wife the entire property of the husband, and required her, if anything was left after the payment of taxes, and the support of herself and children, to aid the husband "in case of sickness or inability to support himself by manual labor." *Held*, that there is neither justice nor equity in thus depriving the husband of the benefit of his estate. If the husband is insane it is monstrous to do so; if he is not insane and has failed to take proper care of his wife, and his conduct has been such as to justify her in asking a separate maintenance, the court is unable to see why he should be deprived of his whole estate.

2. CONSERVATOR OF A LUNATIC.—If by the decree it is intended to make the wife the conservator of her lunatic husband, and therefore give her the control of his estate, it is manifestly erroneous in not providing that bond and surety shall be given, and not complying with the provision of the law generally in such cases. Even if a chancellor in this State has the power to appoint a conservator for a lunatic, some security at least should be required of the conservator.

ERROR to the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding. Opinion filed October 10, 1883.

Nuetzel v. Nuetzel.

Messrs. HAY & KNISPEL, for plaintiff in error; as to the rule to be followed in the allowance of alimony, cited Wheeler v. Wheeler, 18 Ill. 39; Ross v. Ross, 78 Ill. 402.

As to the court having jurisdiction of the appointment of a conservator: Hurd's R. S. 1881, Ch. 87 p. 713; Doulin v. Hettinger, 57 Ill. 348.

Messrs. NEEDLES & NOETLING, and Messrs. WILDERMAN & HAMILL, for defendant in error; that to entitle a wife to separate maintenance it is not necessary the cause of separation should be such as would entitle her to a divorce therefor, cited Ross v. Ross, 69 Ill. 569; Willetts v. Willetts, 104 Ill. 122.

The proceeding is not to appoint a conservator, but to enable defendant in error to discharge the burden imposed upon both parties by the statute, and equity has jurisdiction: R. S. 1874, Ch. 68, § 15; Bauman v. Street, 76 Ill. 526; McGee v. McGee, 91 Ill. 548.

The action of the trial court in separate maintenance will not be reviewed unless there is a gross abuse of the discretionary power: Joliff v. Joliff, 32 Ill. 527; Foss v. Foss, 100 Ill. 580; Wheeler v. Wheeler, 18 Ill. 39.

If the decree has the effect, as contended by plaintiff in error, of divesting him of his land, this court has no jurisdiction; the case involves a freehold: Carter v. Penn, 99 Ill. 390; Bridges v. Rice, 99 Ill. 414.

CASEY, J.    The defendant in error filed a bill in chancery against the plaintiff in error in the Circuit Court of St. Clair county at the September term thereof, 1880.    In the bill it was averred that she was married to the plaintiff in error in 1854, and that they lived together as man and wife until 1875. That as a result of said marriage, they had four children; Gottfried, aged 25 years; Anna, aged 19 years; John A., aged 13 years, and John P., aged 10 years; that the last two are living with the complainant.

That her husband is the owner of sixty acres of land of the value of $4,000, and of the rental value of $350 per annum, and money loaned out amounting to $1,500.    That said prop-

erty is the result of the joint labor of the husband and the wife. The complainant charges that about six years before that time the defendant beat, choked and otherwise maltreated her, and a repetition of such treatment was prevented the following year by the intervention of her son. The bill further shows that in the latter part of the year 1875 the plaintiff in error became insane; that while in that mental condition he wasted and squandered large sums of money. That upon a trial he was found to be insane by a jury and sent to the insane asylum at Anna, Illinois, where he remained for the period of four years. That he was then permitted to return to St. Clair county and has since resided with his son Gottfried. The bill further charges that he is not sufficiently restored to be capable of managing his property and that he is unsafe and dangerous.

The prayer of the bill is that the defendant be summoned to appear and answer the bill, the answer under oath being waived; that the defendant be enjoined and restrained from controlling or managing the property, and that a conservator may be appointed to take charge of said estate and personally manage the same, and that a reasonable separate maintenance be allowed the complainant.

A guardian *ad litem* was appointed for the defendant who answered the bill. There was no other appearance on the part of the defendant.

The cause was heard and the following decree was entered: And now, on the first Thursday of the term comes the complainant by Noetling & Halbert, her solicitors, and it appearing to the court that the defendant was duly served with summons in said case, on motion the court appoints Thomas Quick, Esq., guardian *ad litem* for said defendant; and now on the 23d day of September, 1880, the said guardian *ad litem* files his answer, neither admitting nor denying the allegations of the bill, but requiring proof. And now, on the 16th day of December, 1880, being the thirteenth Thursday of the term, being the day on which the case was set for hearing, it was called and heard on the bill, answer and oral testimony, also records: and the court being now fully advised in the

premises, finds that the complainant and defendant were lawfully married in St. Louis, January 8, 1854, and that she lived with said defendant as his lawful wife until the year 1875; that during said time they acquired the following described real estate, to wit: Sixty acres of land, being lot three, in section six, in township two north, of range eight west, in St. Clair county, Illinois, as the same appears on plat book A, page 401, in the recorder's office of said county. That the annual rental value of said land is three hundred and fifty dollars. That the moneys loaned out by the said defendant amount to fifteen hundred and fifty dollars. That four children as the issue of said marriage are now living, of whom John A. Nuetzel, aged thirteen years, and John P. Nuetzel, aged ten years, are living with the complainant and are supported by her.

The court further finds, that on proper inquiry by a jury in the county court of said county, had on the 20th day of December, 1875, said defendant was found to be insane, and a fit person to be sent to a State hospital for the insane; that he was thereupon sent to the insane asylum at Anna, Illinois, where he remained four years, but has since returned, and is endeavoring to obtain possession of said lands and moneys. That he is not restored so as to be a fit person to have control and management of said property and money, and he is an unsafe person to have the custody of said children, and for the same reason the complainant is unable to live with him, as it would be very unsafe for her to do so. The court further finds that said defendant is an able-bodied man and able to earn his living by manual labor. The court also finds that the complainant, since the time said defendant was so declared insane as aforesaid, has had the care and custody of said children, provided for them and sent them to school. That she has had the possession, control and management of said land and notes representing said money loaned out, and that she is a proper and fit person for that purpose. It is therefore ordered and decreed by the court that the complainant retain the possession, control and management of said land and of the moneys loaned out, and that she receive the rent and income from

the said land and moneys, free from the interference of said defendant. That out of the same she pay the taxes and necessary repairs, and out of what then remains, she use so much as may be necessary for the support of herself and said minor children, and if she has any surplus she shall use the same to assist the defendant, especially in case of sickness or inability to support himself by manual labor. And any surplus she shall properly invest and use, if necessary, for the support of herself and said children and of the defendant.

The defendant is hereby restrained and enjoined from interfering with or molesting the complainant, or said minor children, and from interfering with the possession, control and management of said land and money, and from collecting rents and interest on said money. Ordered further, that complainant, out of the rents and moneys she may so receive, pay the costs of this proceeding.

The decree seems inconsistent. In one paragraph it finds that the defendant is of unsound mind, and incapable of taking proper care and management of his property. In the next paragraph it finds that the defendant is an able-bodied man, capable of earning his own living by manual labor.

Taking either view of it, the decree is manifestly unjust and inequitable. If the plaintiff in error was of unsound mind, suffering with the greatest of all human maladies, then it is not too much to say, that a large part, if not the whole, of his property should have been set apart for his support and maintenance.

If it was true that he was an able-bodied man, able to earn his living by manual labor, then we can not see why he should be stripped of his entire property, the result of years of toil and labor. He had committed no wrong that justified such spoliation. He had lived with his wife harmoniously, so far as the record shows, for nearly twenty years, when, six years before the filing of the bill, when it may be his mind was gradually giving way, when his reason was becoming dethroned, he had been guilty of cruel treatment toward his wife. Since that time he had spent four years in an insane asylum. Whether cured of his malady or not he was at-

Nuetzel v. Nuetzel.

lowed to return to his home by the officers in charge of the asylum. There is nothing in the record to show that since his return he has made any effort to maltreat his wife or injure her in any manner whatever.

If it was intended to allow the defendant in error a separate maintenance the amount should have been fixed, and it should have been in a fair and just proportion to the amount of the property held by the husband.

The courts have held that a decree which gives the wife substantially all the defendant's property for alimony is manifestly wrong. That, however, may largely depend upon the circumstances surrounding each case. We can not find that there is anything in the facts in this case that justified a decree against the defendant depriving him of all the property he had. If the cruel treatment charged since the release of the husband from the asylum was because of a "mind diseased," or a disordered brain, then the wife was not entitled to a separate maintenance; and so she seems to have been advised, because she asks that the court may appoint some discreet person conservator of the estate of her husband. And we are not at all prepared to say that the bill filed in this cause justifies a decree for separate maintenance. It is not warranted by the allegations in the bill or by the facts as found in the decree.

If by the decree it is intended to make the wife the conservator of her lunatic husband and therefore give her the control of his estate and its management, then it is manifestly erroneous, because it does not provide that bond and surety shall be given, and does not provide for a compliance with the provisions of the law generally in such cases.

The question as to the power of a chancellor, in this State, to appoint a conservator for an insane person has not been presented by counsel for the plaintiff in error. The statute provides for such appointments by the county courts. Even if the power rests with the chancellor, some security at least should be required of the conservator. In this case the property of the plaintiff in error may be wasted and squandered, and he may be a pauper in an insane asylum or on the streets.

Although the owner of some property, he is by the decree of the court in this case made a pauper dependent on what would seem to be the very uncertain generosity of his wife for support.

We are unable to see that there is any justice or equity in thus depriving him of the benefit of his estate. If he is insane it would seem to be monstrous to do so. If he is not insane and has failed to take proper care of his wife, and his conduct has been such as to justify her in asking a separate maintenance, we are still wholly unable to see why he should be deprived of his entire estate. In that event it would have been proper for the chancellor to have fixed a proper sum, taking the evidence and circumstances into consideration, for the separate maintenance of his wife, and required it to be paid at such times as would seem proper. The decree, as will be seen, does just the opposite of this. It gives to the wife the entire property and requires her, if any thing is left after the payment of taxes, the payment for improvements and the support of herself and children, to aid the husband, and in case of sickness or inability to support himself by manual labor. Instead of requiring the husband to support and maintain the wife, it gives all the property to the wife, and upon the happening of a quite remote contingency, provides that she may aid him.

The decree seems manifestly unjust and the judgment of the circuit court is reversed and remanded.

Reversed and remanded.